[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
The captioned matter is a dissolution action.
FACTS
CT Page 5214
After trial, the following facts are found:
 The plaintiff ("Ms. Dowling"), whose maiden name was Diane Mulholland, and the defendant ("Mr. Dowling") were married on August 3, 1973, in Wolcott, Connecticut;
 Ms. Dowling was a resident of Connecticut for the year immediately preceding the filing of the complaint in this action;
 There are no minor children, issue of the marriage of the parties, and no children have been born to Ms. Dowling since the marriage of the parties;
 The marriage of the parties has broken down irretrievably;
 Neither of the parties has received support or maintenance from the State of Connecticut or from any Connecticut municipality;
The plaintiff:
Is 44 years old;
 Has received a B.S. degree in nursing and an M.A. degree in business;
 Has been director of nursing at New Britain General Hospital since 1980;
 Has earnings of $77,584, annually, from her employer;
 Is unlikely to obtain employment in the future which would pay her significantly more than she is now earning, after adjustments for inflation;
 Suffers from diabetes, which is at a stage which causes her to lose consciousness approximately four times annually, sometimes while she is driving an automobile and sometimes while she is working;
 Is at significant risk of becoming disabled from employment by diabetes in the near future; CT Page 5215
 Has vested pension benefits from her employer which have a present value of $45,740 which will provide to her monthly benefits of $1,576.49 per month on her retirement and at any time when she is disabled and receiving Social Security disability benefits;
 Is entitled to receive $100 per month from her, employer in disability benefits, after a waiting period, which are in addition to the monthly pension benefits of $1,576.49 described above;
 Received some of her education during the marriage of the parties, for which $4,820 was paid from marital funds, while the balance was paid by other parties;
 Has a personal injury claim arising out of a December 1996 accident, as to which no evidence was offered concerning value, so that no value is found for that claim;
The defendant:
Is 45 years old;
 Has received an Associates Degree in applied science;
 Is a senior vice-president of an architectural firm, Jeter Cook Jepsen Architects, Inc. ("JCJ"), where he is the director of the project management group;
 Is one of six principals at JCJ. Four of the others are architects and the fifth has a B.A. degree and has also done some graduate work;
 Has an annual salary of $80,000, and receives annual bonuses. His earnings from JCJ in the last three years were, approximately, as follows: 1994, $118,000; 1995, $126,999; and, 1996, $116,500;
 Would find it difficult to find equivalent employment at another architectural firm because, when hiring laterally, architectural firms generally require someone at Mr. Dowling's level to be an architect; CT Page 5216
Is in good health;
 Has an account in the JCJ 401(K) retirement plan ("401(K) account") to which JCJ makes annual contributions of $3,000 — $4,000 and to which Mr. Dowling makes the maximum permitted annual contributions;
 Had a balance of $26,664 in the 401(K) account when the parties separated in November 1991;
 Has a present balance of $71,768 in the 401(K) account;
 Has contributed $33,620 to the 401(K) account since the separation of the parties;
 Purchased a minority interest in the stock of JCJ pursuant to a contract dated September 11, 1990 ("stock purchase agreement") at a purchase price of $82,680 ("stock purchase price");
 Arranged with Mrs. Dowling to borrow the stock purchase price under a second mortgage on a house on Erica Court in Southington which was then owned by the parties jointly ("Erica Court house");
 Is effectively restricted by the terms of the stock purchase agreement from selling his stock in JCJ until his death or until the termination of his employment at JCJ;
 At the time the parties married, neither of them had significant assets;
 From the time of their marriage and down to the present, Mr. Dowling's earnings have been greater than Ms. Dowling's;
 The parties sold the Erica Court house for $220,000 in the Fall of 1995;
 The net proceeds from the sale of the Erica Court house were placed in escrow with Ms. Dowling's attorney, William Eddy (the "Eddy escrow"), and by agreement of the parties, distributions were made from the Eddy escrow to Ms. Dowling of CT Page 5217 $43,000 and to Mr. Dowling of $15,000;
 Ms. Dowling used the $43,000 which she received from the Eddy escrow as a payment on the purchase of a home;
 Mr. Dowling used the $15,000 which he received from the Eddy escrow to retire accumulated debts;
 The balance now in the Eddy escrow is approximately $26,000;
 Ms. Dowling deferred the tax on her portion of the capital gain realized from the sale of the Erica Court house by buying another home;
 Because the Erica Court house had not been Mr. Dowling's principal residence for several years before its sale, Mr. Dowling has a tax liability of approximately $20,000 on his portion of the capital gain on that sale, which he cannot defer;
 Mr. Dowling has had his employer withhold more in taxes from his earnings than will be required to pay his taxes on those earnings in order to create a reserve which can be applied to his capital gains tax liability on the sale of the Erica Court house, and that reserve, of approximately $6,000, is not reflected on his financial affidavit dated February 20, 1997 which he filed with the court. As a result, his net capital gains tax liability is approximately $14,000;
 From the time the parties separated in November 1991 until the Erica Court house was sold in the Fall of 1995, Ms. Dowling lived in the Erica Court house and made the payments on the first mortgage on it, while Mr. Dowling made the payments on the second mortgage on it;
 During the separation of the parties, Ms. Dowling made substantial loans and gifts to Robert Sitz, and she is now owed $7,124 by Mr. Sitz;
 It is likely that, in the future, Mr. Dowling will have larger earnings and better opportunities for the acquisition of capital assets than Ms. Dowling;
During their marriage, the parties contributed to the CT Page 5218 acquisition, preservation and appreciation in value of their assets proportionately to their respective incomes;
 The marriage of the parties broke down because the parties developed separate interests and grew apart. That breakdown was not caused by the fault of either party.
DISCUSSION
The contested issues in this case concern alimony to Ms. Dowling and the division of the assets of the parties.
The parties have entered into stipulations concerning the division of certain of their assets, and those stipulations are incorporated in the orders entered hereinafter.
Alimony
The court has considered all the factors set out in § 46b-82 of the General Statutes (further section references are to the General Statutes) concerning the award of alimony. The most important of those factors on the issue of alimony in this case are: the length of the parties' marriage; the health of each of the parties; the amount of income of each of the parties; and, the needs of each of the parties.
For so long as Ms. Dowling is able to work and generate earnings comparable to those which she now enjoys, there is no need for her to receive more than nominal alimony. However, the prospect of her becoming disabled in the future requires that she retain the capacity to petition for assistance from Mr. Dowling. Accordingly, alimony of $1 per year is hereinafter awarded to Ms. Dowling. Because the parties have been married for 23 years, and because termination of alimony upon her remarriage would unduly restrict Ms. Dowling's lifestyle choices, the alimony awarded to her is not terminable simply because of her remarriage, if any.
Division of Assets
The division of the parties' assets involves three questions:
 1. Should the assets in the marital estate be valued as of the date of the parties' separation or of the date of dissolution; CT Page 5219
2. What assets are part of the marital estate; and
 3. What percentage of the marital estate should be awarded to each party.
1. Valuation Date
In Sunbury v. Sunbury, 216 Conn. 673, 676, the court said:
 In the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property. (Quotation marks and citation omitted.)
Ibid, 676.
Accordingly, the assets of the parties are valued by the court as of the date of dissolution.
2. What Makes Up The Marital Estate
When the parties married, neither of them had significant assets. No evidence was offered to establish that any of the assets acquired by either party since then was acquired by gift or inheritance. Accordingly, the only dispute is whether the contributions made to the 401(K) account after the parties' separation in 1991, $33,620, are part of the marital estate. InPapageorge v. Papageorge, 12 Conn. App. 596, 599 (1987), the court said:
 As noted above, § 46b-81 (c) of the General Statutes requires the court to consider the contribution of the parties to the "acquisition, preservation or appreciation in value" of the estates when determining what property should be assigned as an award in a dissolution action. The evidence in this case indicates that the bulk of the property owned by the plaintiff was acquired after his separation from the defendant and that the defendant played no role in either the acquisition or preservation of that property. Thus, the trial court's decision to award the defendant the only property the plaintiff possessed upon separation was clearly an exercise of lawful discretion.
Ibid, 599. CT Page 5220
Mr. Dowling claims that during the separation, he was frugal and made contributions to the 401(K) account, while Ms. Dowling spent her discretionary income foolishly, as evidenced by the loans and gifts which she made to Robert Sitz. Mr. Dowling argues that his frugality should be rewarded, and that Ms. Dowling's lavish spending should be punished, by excluding from the marital estate the contributions made by him to the 401(K) account during the parties' separation.
During the first four years of their separation, Ms. Dowling paid the first mortgage on the Erica Court house, and Mr. Dowling paid the second mortgage on it. While Mr. Dowling made contributions to the 401(K) account during their separation, Ms. Dowling was simultaneously earning credit toward her pension at New Britain General Hospital, which is part of the marital estate and has been found to have a present value of $45,740. Thus, during their separation, both parties contributed to the increase in their collective assets.
During their separation, Ms. Dowling made substantial loans and gifts to Mr. Sitz. However, there was no evidence that those loans and gifts came from principal, and so it is inferred that they came out of her income. To the contrary is the situation of Mr. Dowling who, although his income exceeded Ms. Dowling's by $40,000 to $50,000 annually, was required to spend $15,000 of principal (his distribution from the Eddy escrow) to retire accumulated debt.
In the absence of evidence that, during their separation, Mr. Dowling was unusually frugal and Ms. Dowling was unusually lavish, it is found that the approach set out in the quoted excerpt fromPapageorge would not be appropriate here, and it is held that the contributions to the 401(K) account made during the parties' separation are part of the marital estate.
3. Percentage Awards
The court has considered all the factors set out in § 46b-81
concerning the division of assets. The most important of these factors on the issue of the division of the parties' assets in this case are: the health of each of the parties; the amount of income of each of the parties; the needs of each of the parties; and, the opportunity of each of the parties for future acquisition of capital assets and income. CT Page 5221
Because Ms. Dowling's health is poor and Mr. Dowling's is good; because Mr. Dowling's income exceeds that of Ms. Dowling by $40,000 to $50,000, annually; because of the risk of Ms. Dowling becoming disabled, which would make her needs greater than Mr. Dowling's; and, because it is likely that Mr. Dowling will have better opportunities for future acquisition of capital assets and income, fifty-five percent of the marital estate is hereinafter awarded to Ms. Dowling, and forty-five percent of it is hereinafter awarded to Mr. Dowling.
Capital Gains Tax Liability
Mr. Dowling's net liability of $14,000 for the tax on his portion of the capital gain on the sale of the Erica Court house is held to be a marital debt.
Stipulations
The parties have stipulated that:
 All tangible personalty now in the custody or control of a party should be awarded to that party, except that the following items now in the custody or control of Ms. Dowling should be awarded to Mr. Dowling:
 Small chest of drawers from living room; Grandfather clock from foyer; and, Set of china from Mr. Dowling's family.
The parties have also stipulated that:
 Any money recovered by either party in respect of the asset described on Ms. Dowling's financial affidavit which was filed with the court, which is dated February 20, 1997, as "Glaston Boat DeMarco Loan" shall be divided equally between the parties.
 Distribution of Assets
As stipulated by the parties (Court Exhibit 1), the following is a listing of the assets of the parties:
 Value of Asset Value of Asset Value of Whose Title Whose Title Assets CT Page 5222 Description Now Stands in Now Stands in Jointly of Asset Ms. Dowling's Name Mr. Dowling's Name Owned — --------- ------------------ ------------------------------ Ms. Dowling's house $46,700 Present value of Ms. Dowling's pension 45,740 Loan due from Robert Sitz 7,124 Ms. Dowling's vehicles 18,000 Ms. Dowling's bank accounts 200
The 401K account $71,768 Mr. Dowling's Stock in JCJ (Average of 80,359.50 (both parties' values) Mr. Dowling's vehicles 36,200 Mr. Dowling's bank accounts 9,948 Mr. Dowling's stocks and bonds 988
Eddy Escrow 26,000 ------------------------------------------------ TOTAL $117,764 + $199,263.50 + 26,000± =
GRAND TOTAL $343,027.50
It has been held that Mr. Dowling's net tax liability of $14,000 on his portion of the capital gain realized from the sale of the Erica Court house is a marital debt. Accordingly, that amount is subtracted from the marital estate of $343,027.50 and set aside separately to Mr. Dowling, so that the value of the net marital estate to be divided between the parties is $329,027.50. Of that net marital estate, 55%, or $180,965.12, is hereinafter awarded to Ms. Dowling, and 45%, or $148,062.38, is hereinafter awarded to Mr. Dowling.
These awards will be implemented by an order distributing $13,000 from the Eddy escrow to each party, an order awarding 55% of that portion of the Eddy escrow which exceeds $26,000 to Ms. Dowling and 45% of that portion to Mr. Dowling as well as a Qualified Domestic Relations Order transferring CT Page 5223 $37,201.12 from the 401(K) account to Ms. Dowling.
ORDERS
 Dissolution
The marriage of the parties is dissolved, and each of them is declared to be single and unmarried.
Alimony
Mr. Dowling is ordered to pay to Ms. Dowling periodic alimony of $1 per year. Alimony shall terminate on the death of either party, but shall not terminate as a result of the remarriage, if any, of Ms. Dowling.
Until his obligation to pay alimony to Ms. Dowling has been terminated, Mr. Dowling shall maintain, and promptly pay all premiums therefor, life insurance on his life in an unencumbered amount of not less than $100,000, which shall be payable to Ms. Dowling.
Division of Assets
There is awarded to each party the tangible personalty now in her or his custody or control, except that each of the following items now in the custody or control of Ms. Dowling is awarded to Mr. Dowling:
 Small chest of drawers from living room; Grandfather clock from foyer; and, Set of china from Mr. Dowling's family.
There is awarded to each party one-half of all sums recovered by either party from the asset described on Ms. Dowling's financial affidavit which was filed with the court and dated February 20, 1997 as "Glaston Boat DeMarco Loan."
There is awarded to each party $13,000 from the Eddy escrow. In addition, there is awarded to Ms. Dowling 55% of that portion of the Eddy escrow which exceeds $26,000, and there is awarded to Mr. Dowling 45% of that portion. Attorney Eddy shall make the distributions provided for in this paragraph. CT Page 5224
There is entered a Qualified Domestic Relations Order transferring $37,201.12 from the 401(K) account to Ms. Dowling.
Levine, J.